Case number 23-1763 and 1843 United States of America v. Carl Collins III Argument is not to exceed 15 minutes per side. Mr. Higby, you may proceed for the Good afternoon, Your Honor. May it please the Court. My name is Robert Higby. I represent the appellant, Carl Collins III. I'd like to reserve three minutes for rebuttal argument. Mr. Collins should be granted a new trial in this matter because the government utilized a fundamentally flawed methodology for calculating his income. That methodology was much too simplistic, in that it failed to account for related disbursements of funds received by Mr. Collins in subsequent years. It failed to account for material limitations on disbursements of funds, such as through court orders. And lastly, that those funds were the property of third parties, whether it be Mr. Collins' clients or medical providers. You didn't enact all of that at trial, right? It was addressed at trial, not in the manner that it was addressed in the motion for new trial. The expert witness called by Mr. Collins at trial did a running analysis of available totals in his IOLTA accounts. What came after trial was a much more detailed analysis. So what is the authority? I'm a little confused as to what authority you're relying on to say, well, our expert didn't do a good enough job at trial, so we need a new trial to show that he was really right. I think the authority that was relied on below is the authority vested in Rule 33A, which is a court can grant a new trial when it's convinced that a miscarriage of justice has occurred. I admit that this is an atypical application of that. The Munoz case that's cited by my friend talks about what is the typical application of that case. That case involved, I believe, an ineffective assistance of counsel issue. This would be an atypical application of granting a new trial, but one that we think is nonetheless justified. So it's not really a substantial, you're not making a substantial weight argument? No, and I think that was specifically disclaimed below by Mr. Collins post-conviction counsel, that it was not a newly discovered evidence claim. So it's just kind of this interests of justice theory? That's correct, Your Honor. Which we haven't recognized. We haven't rejected it, I suppose, but we've left it open, is that right? I think that's an accurate statement of where the law is in the Sixth Circuit. But getting back to Judge White's question, when do you get a do-over? Why didn't you use the witness that you had post-trial at trial? I don't understand. How many bites at the apple do you get? Well, respectfully, Your Honor, I'm not sure that this is another bite at the apple. I think this evidence in the motion for new trial, all it does is highlight the flaws of the government's methodology as opposed to somehow being newly discovered in that character. Is that cut for you or against you? Well, I think that cuts for us because here we have a situation in an income tax case, a false tax case, where the government is using a methodology that just takes money in, money out, without regard for any other circumstance, which resulted in his income being grossly overstated. You know, the government was using a cash basis accounting approach, and didn't your client use the cash basis himself in terms of record-keeping and or tax return information? That's correct, Your Honor. So, tell me this, what was wrong with the evidence as submitted by the government based on this cash basis approach? Well, several things, Your Honor. One is, for example, in 2018, Mr. Collins received funds that were subject to a probate court distribution order that did not come until 2019. Nonetheless, those funds were counted as income towards Mr. Collins in 2018, even though he couldn't disperse those funds or realize those funds in 2018. Okay, so what was wrong with that? Because it's ascribing... I mean, that's a matter of law. What was legally erroneous? It's ascribing income to Mr. Collins that should not be. It's inflating his income. And in three of the years that are out of the five years of conviction, he overstated his income based on the expert's report. Well, let me ask you this. Did you make that argument to the jury? The argument... Were you the trial attorney? I was not, Your Honor. Do you know if the trial attorney, the argument you just set forth, was that presented to the jury at trial? Not in those terms, Your Honor, because the analysis that Mr. Collins' expert witness did not engage in that level of analysis. He did not testify that Mr. Collins had overstated his income. Well, if your client, through his expert witness, did not present that argument but presented a different argument, how can you then, on appeal, raise the argument that you're raising? I think it was clearly presented in the motion for new trial, which is what we're suggesting the district court erred. Yeah, but maybe you were in the motion for new trial arguing evidentiary matters differently than you did at trial, which seems to be what you're saying. I think that the evidence that was presented with respect to the new trial, built on the attack that Mr. Collins made during trial. Is your argument that the expert witness you used post-trial, that that expert's opinion was different from and or conflicted with the opinion of the expert that your client used at trial? Is that in part what you're saying? I don't know that it conflicted with, I think it's more detailed and in that sense makes it different. It was a much more detailed recitation of Mr. Collins' income in these particular years. Okay, instead of saying that it conflicted, the two experts' testimony were different from one another. That's what you seem to be saying. Do you concede that? I think one is more general, one is much more specific. I think that's true, Your Honor. I think that's apparent from what Mr. Collins' trial expert testified to and what the report that was produced in connection with the motion for new trial. The expert's methodology that you're objecting to is that the expert counted receipts that were subject to a lien or whatever. They didn't all belong to Mr. Collins, right?  That's correct, Your Honor. But in that same year, didn't the expert deduct outflows that were attributable to the year before? Do you mean the government's expert? Yes. No, I don't believe so. I believe the government's analysis was calendar year. Right, I know. So if money went out, you said, okay, they counted money for 2018 that wasn't distributed until 2019, right? Is that what you just said? That's one example in response to Judge Clay's question. But in looking at 2019, the government counted those deductions, those distributions, right? I'm not sure that the... The point that I'm getting to is that this is all the kind of thing that the trier of fact decides, which expert's credible, what method is credible. And even if we were to accept all of this, we would be performing a function that's not proper, where you had an opportunity to challenge that testimony at trial, right? Certainly there was an opportunity to challenge it, Your Honor, and it was challenged. But methodology's infirmity is not something that I think you should ignore. I think it's something that fits within Rule 33A. All right. So does this error only affect the conviction or does it also affect the sentencing? I think it affects the restitution amount as it impacts sentencing, Your Honor, because that amount was based on what we allege is a flawed methodology as well. Okay. And then, so the restitution amount was reduced drastically, right? From what the government claimed, like from what, 2 million down to 600? I think it was ultimately reduced or ultimately Mr. Collins agreed to 661,000, I believe, Your Honor. Okay. And that was agreed to, right? Do you have any idea how they arrived at that number? I wasn't his counsel at that time. I wasn't privy to those negotiations. I didn't hear you. I wasn't Mr. Collins' counsel. Right, but do you know? I think there was back and forth between his counsel and the government in terms of how, what the appropriate number would be, reserving Mr. Collins' ability to challenge that number on appeal based on the argument that we're presenting. Okay. I would just close by saying that the issue of intent was central in this case at trial. And the reality that the government was permitted to put before the jury inflated income numbers is something that we believe resulted in a miscarriage of justice because it impacted the jury's ability to judge what Mr. Collins intended or didn't intend with respect to his tax returns. This was a jury who clearly paid attention. He was acquitted of several counts in this case. We think that putting the proper levels of income before the jury, in particular that he had overstated his income on three years, in essence cheated himself, is something that would have been critical. And we think that the court should vacate these convictions and grant a new trial. The jury heard evidence, I assume, that he placed money that was not received from client settlements into that IOLTA account, right? Like money from, like a dividend from his real estate business, right? That's correct, Your Honor. I'd like to reserve the rest of my time for rebuttal, please. Very well. We'll hear from the government. May it please the court, Hannah Cook for the United States. Your Honors, I think Judge White had this exactly right. This was a factual determination, and in fact, this is defendant's third attempt to get a bite at this apple. Isn't it unusual for the district court to have a hearing like this and allow the defendant to bring in another expert? Absolutely. It was very generous of Judge Drain, but as ... I mean, does it indicate that maybe he had some doubts? No, Your Honor. I'm just curious why he would essentially give them a better expert, and then they could have made any of these arguments at trial, but he ... I don't know, why would he have to do that if he didn't think there was something to it? Your Honor, I think that Judge Drain is a very careful judge. As my friend mentioned, this was a very careful jury and a very careful judge, and honestly, the expert report is a little difficult to understand in places, and so I think it really genuinely benefited the judge to hear from the new expert, as well as the government's  The government brought back Ms. Williams, who had testified at trial, to explain why a defendant's expert's report was flawed, and indeed, as you can see from the written opinion that the judge issued, the judge, after hearing that testimony, had no question. The judge found that the new expert's method was inconsistent and that it had cherry-picked data, and that's the finding that is on appeal here, that the judge abused his discretion in denying this new trial motion based on those, what I assume my friend alleges, is an incredibly high standard for him to meet, and that's simply untrue here. As you were discussing, for starters, it's only two of the counts his expert says were... Three of the counts the expert agrees that he understated his income, and that's in the motion at page ID 2758, so the 2012 original, the 2012 amended, and the 2015 corporate. All of the evidence presented all of the time at both the trial and the hearing agree defendant understated his income by hundreds or tens of thousands of dollars, so the only two counts where this new trial motion could conceivably have any legs are the 2015 and the 2018 returns. Not only did the government's expert explain at the new trial hearing why this expert is double-counting, basically giving him credit for two years' worth of expenses on one year of income, she went back and did the analysis using an accrual method, which I believe it was Judge Clay noted is not the accounting method that the defendant selected on his tax returns. He chose to be a cash basis taxpayer. That's what he told his return preparers. It's what he put on his returns, but nevertheless, Ms. Williams went through, and in the transcript of the new trial hearing, that's docket 142, she testified that redoing the calculations using an accrual method of accounting, defendant understated his income by over $68,000 in 2015 and $186,000 in 2018. Those are at page ID 3006 and 3010, so the only way defendant can manufacture this purported overstatement of income is to double-count, and that's simply not a method of accounting. It doesn't reflect his actual tax liability, and it certainly wasn't an abuse of discretion for the district court to refuse to grant him a new trial so that the government could explain to a new jury why that was the case. Can I ask you a mechanical question? Certainly. Before, because I'm not familiar, I suppose, with some of the practice in criminal, was there an exchange of expert reports before the trial? Yes, I believe so. I know defendant's expert was qualified as an expert. I was not trial counsel, but I would assume that they followed through with their Rule 16 disclosures. Did Ms. Williams submit a report? I do not. I know she would have submitted her computations. I don't know if it was in the form of a formal report, but her computations were disclosed in discovery. That's my understanding. Was she qualified as an expert? She was qualified as an expert for the new trial hearing. I do not believe that they qualified. I don't recall if they qualified her as an expert at trial. I'm sorry, I don't recall, but I do know that we formally tendered her. She was like the primary investigator or one of the primary investigators? No, Your Honor. She was strictly brought in to do tax computations distinct from the investigation. What she was given was the bank records, the tax returns, and she sat at trial and served as a summary witness. There were different investigative agents, some of whom were, I don't believe the investigative agent was called, but the auditor was called to testify about certain steps in the audit process. She was called as a summary witness at trial just to essentially sum up the bank deposits. If you look at it, you can see essentially what she was presenting to the jury there at, let me make sure I've got this correctly, there was 140 to 152. Those are at appendix roughly 452 to 459. You can see basically all she's testifying to at the time because what mattered was whether he'd understated his income, whether he'd understated these receipts. So what she was testifying to was before that in the appendix, you'll see there's these spreadsheets of here's all the checks that came in, here's all the checks that went out. And so she was just doing math and then presented some summary. But she testified as an expert, right? She testified as an expert at the new trial hearing because the new trial hearing had much more about accounting and this accrual versus cash method. Well, but there wasn't an issue, right? I mean, she was called to testify. Nobody said, defended and said, well, qualify her or anything, right? Absolutely not. And she testified just like she did at the new trial hearing that she's a CPA, she has an MBA from the University of Michigan in business administration. I don't think anyone had any qualms about her ability to do the computations that she did either for the trial where it was really focused on the understated income or at the new trial hearing where it was a little more technical about the accrual versus cash basis. But no, as you're saying, Judge White, there was no question that she was thoroughly competent to do that, whether she was tendered as an expert or as a summary witness. Does the amount of the understatement affect the sentence like in a fraud way, like a 2B1.1 table, does it drive the range at all? So the tax table does include ranges like the fraud table does, but no, this doesn't matter. Indeed, if you look at the sentencing transcript, so the range in which she was sentenced is the 1.5 to 3.5 million for tax loss. And the parties admitted at sentence, the parties agreed at sentencing that defendants objections to the tax loss computations would not have made a difference. And I wanted to actually address this really quickly with Judge White. So the 2.7 million is the tax loss. So that's the amount, that is the loss he intended to cause across all the entities and all the years during which the scheme is active. The tax table includes basically a conspiracy style. It's all conduct violating the tax laws during the period in question is included for the guidelines computation. So that's where that 2.7 million number is. Restitution is specifically only the actual loss from the counts of conviction. And so if you look at the government sentencing memo, which is at, I believe it's ECF 142. So only the five counts of conviction, two of which have the same, sorry, because there are two years. So it's only 2012, 2015, 2018, and the 2015 corporate. So just that set, which is all that's restitution, that's the 600,000. In computing that though, you're talking about the actual tax rate, right? Yes. So that's the actual loss. And if you look at the stipulation, which I mean, this is the number of the government calculated in a sentencing memo. It's also what defendant stipulated to. It's this 661,000. And then the government accounted for certain payments that he had already made. Because as you say, it's actual loss payments that he made in advance of sentencing are credited. And then the amount due for various years. So that's where those numbers came from. And I don't understand defendant to have, other than this argument about the double counting, which I don't understand him to have identified any other error on the restitution calculation. I know there was a brief mention of dividend tax rates. If you look at the exhibit A to the government's sentencing submission, which again, I think is 142. Let me just make sure I don't. I'm sorry. It's 144. 144 is the government's sentencing. You can see that the dividends are treated as qualified dividends on line 7A. It was a 15% tax rate for qualified dividends in 2012. So I mean, that is sort of a red herring. And that is the number. That is the number that everyone stipulated to below because it's the correctly calculated number for those years. I just want to make sure I understand. Normally, if everybody's doing everything right, there are no taxes relevant to an IOLTA account. Correct. Right? I mean, the money comes in, it's there for safekeeping. It's dispersed to different people. And when the attorney gets his share, whatever is on top of the cost and stuff, that's income. But not until that point, right? Is that right? So the IRS rules are that the fee is calculated as income when the attorney receives the fee, receives the settlement, and the fee is ascertainable. So in this case, came in, he could have calculated divide by three. That's how much was supposed to be his fee. And in the normal course of business, what he would do is then transfer that to an operating account. Transfer it to an operating account. Because as you say, IOLTAs are being held in trust for third parties. He can't transfer it to an operating account until what's left is just the net for him. I don't believe that's correct in a fixed fee environment. Because certainly, Your Honor, if there were things that were undetermined, an attorney might need to do some sort of billing calculation and fees, but this is a flat fee case. He took these on a flat fee percentage basis. But in any event, sort of neither here nor there. But then what happened here is that that's only the case if you're following the IOLTA rules. And here he was commingling and it just became basically his bank account. Correct. And that's what cases like Isaacson say is that you sort of will give the attorneys the benefit of the doubt on what's in their IOLTA if they're following the rules. If you're not following the rules, you don't get that benefit. And that's how everything was calculated here. I just wanted to make two quick sort of factual notes for Your Honors. When we were discussing earlier in my friend's discussion whether the jury had heard about these disbursements to third parties, that absolutely did come up at trial. It was in the cross-examination of Ms. Williams, and that's at page ID 1669. There was extensive cross-examination about exactly this point, about when you get a check for, call it $100,000, if a third of it's fee, then two-thirds of it isn't. To which Ms. Williams said, yes, that's right, and walked through exactly what you and I just discussed about it's supposed to come out. But if you're not taking it out, then the only way to figure out basically how much income is sitting in that account is to look at money coming in and money coming out and try to identify what is a client payment and what's not. And that was discussed extensively at trial, that was discussed at the new trial hearing, and every fact finder who's had this before them has found that Ms. Williams' analysis was sufficient and that defended. Why does any individual amount matter? I take it it doesn't matter whether it's $100K or $50K or whatever it is if you didn't pay your taxes. That's right. It's still the crime. But I take it, but you're saying that for three of the accounts or two of the accounts, even at the new trial hearing, they didn't suggest that there was a problem with underreporting. I thought they had argued that he had understated or overstated his income. So looking at the expert report for the first 2012 return, because there's an amended 2012, so there are two calculations regarding 2012. So the defendant's new expert calculated that he had understated his income by over $100,000 in 2012. That's at page 7548. Then on the 2012 amended, he found that he had understated. So understated by 100 originally, understated by 55,000. That's on the same page. After the amended came out, and that for the 2015 corporate, he in fact understated the income of the corporation by $331,000. So assuming you have intent, that would be enough to prove the criminal liability on those, is that what you're saying? Correct. So then why are we chipping away at some of this stuff? Because it gets him to the point where what he actually filed was an accurate representation. Was that his argument at trial? Nope. Sorry. No, Your Honor. His argument is, as I understand it- There was no intent, I thought. It wasn't willful. I think that has to be how this playing with the numbers gets you to an overturned conviction. As Your Honor noted, and I apologize, I know my time has run out. He's not arguing that this was against the manifest weight of the evidence. He doesn't bring a sufficiency argument. So I'm not exactly sure, given that this is a false filing. The charges are all 7206, so it's the filing of a false tax return. So you need a materially false line and intent and filing. I don't think we're disputing filing and the jury found intent, but he doesn't argue that the numbers were right. He argues that the numbers were wrong in his favor by, he argues that he had overstated by some 66- So then the counts as to which, assuming we buy this, the counts as to which he overstated would be vacated because he didn't injure the government in any way. So that's not actually a requirement under 7206. You have to make a materially false statement. So for example, if he had accurately reported the income, but vastly inflated his deductions or something, it would still be materially false as long as he knew it was false. But if the result, if truly he overstated his income and in fact he didn't owe any taxes, then that's not a material misrepresentation. There's some case law saying that any misrepresentation, I think it would be more an intent question to judge Nalbadyan's point. I think it would be that someone who is intending to file false returns doesn't usually give the government a bunch of extra money. I think that's how you would think about those two counts. I just don't think there's any way that we actually get that to being the state of the world, given that as long as you pursue a consistent method of accounting across all the years, he understated his income using either cash basis method or the accrual method. So I don't think there's any way that using essentially the right math. You don't get there unless... Unless all the fact finders are very wrong. You litigate. Correct. Let me just ask you, I know we're out of time here, but what about the argument as to the admission of evidence regarding Mr. Collins' relationship with the state bar and whether he might have been unduly prejudiced as a result of that? And then supposedly the evidence was admissible under Rule 4.4.B.2, but what's your perspective on that argument? Your Honor, I think the district court correctly held that this is intrinsic. Many of the events as regards to the use of the IALTA and the tax trial are tracking with that IALTA bar investigation and misuse. He goes to that seminar in 2012, and they say, don't use your IALTA to avoid your creditors like the IRS. And that's when we start later in 2012 seeing him move money around. And then in 2018, when they find that he's commingled, he stops making transfers between the IALTAs, but he starts living out of one of the IALTAs, mortgage and home renovations. So I think that the judge was correct that this is intrinsic and that it helps explain the method that's being used in some of the changes that take place. It explains sort of why the story starts when it does and changes when it does. But I think even so, the judge is also correct that it meets the definition of 404.3.B. It goes to the absence of mistake or lack of intent, which is what the judge found, because it's the same method, right? It's concealing an IALTA, it's commingling funds. And especially when you're getting CLE from the state bar about how to correctly use your IALTA and not commingle and then ultimately get disciplined for commingling, that's pretty good evidence that if you're continuing to do that, it's intentional. But to your point, Judge Clay, about prejudice, the district court found that this was not particularly prejudicial. This court has said before in the Logan case, that's at 250 F3rd 350. That's something like a letter of reprimand, which is what he got here. That's not prejudicial. He wasn't stealing from clients. He didn't engage in any kind of violent crime. This was all pretty banal, honestly. And I don't think the jury would have found prejudice. And I'd note as well that the judge gave a 404B limiting instruction in the closing jury instructions. That's at page ID 2609 to 2610. And as you know, jurors are assumed to follow their instructions. So even if they had some sort of lingering concern, I think the jury instructions would have cured that. Might they have found all of these accounting pretty complicated and not been sure and then maybe said, oh, but the state bar said that what he was doing was improper. So we'll just accept that. I don't think so, Your Honor. It made up a very small part of the testimony and it didn't come up very much throughout. And this was a 12 day trial and these two witnesses testified for about two hours. So it was a pretty small part of the testimony. And the numbers are pretty eye opening. I mean, the evidence presented by Ms. Williams was that understated his income in 2012 by over $600,000 and the amended by over $570,000 in 2015 by over $800,000. So I mean, it's pretty clear. And as Your Honors noted, that's not just checks coming in and out from the law practice. That's hundreds of thousands of dollars in checks from defendants, other business entities going into the IALTA where they had no business being ever. So were the sources of the deposits all identified or was it by inference? I believe this. I mean, so the bank records were in evidence as were some of the charts. So like the who the check is from, essentially, yes, that's in the record. And it's summarized in some charts. So yes. And some of the checks were even shown at trial saying, OK, so this is from this. Here's what the memo line says, that sort of thing. So yes, the jury would have understood that. And we've been sort of focused on the numbers and the accounting today. But there was also extensive testimony from defendants return preparers from his bookkeeper that had a number of fairly inferentially damning assertions, including that the bookkeeper was specifically told not to include the dividends on his personal return, that she objected and said that that was not in keeping with her understanding of how to calculate income on income tax returns. And he overruled her and said, no, she refused to sign the returns because she thought they were false, that when he went to tax return preparers, he only gave them access to certain accounts, not other accounts, and did not, for example, give them his IALTA. He told the bookkeeper not to reconcile the IALTA against his operating account, which would have revealed what was going on earlier. So it wasn't just papers. There were a number of individuals who testified from which the jury could have inferred willfulness and that these numbers were correct. If your honors have no further questions, we'd ask that you affirm. Thank you very much. Any rebuttal? Just a few points, your honors. First, the 2012 amended return, the Bogalis expert report actually found that he over-reported his income to the tune of $56,493. Sorry, who found this? That's the expert report, the motion for new trial. My friend made the argument that the amended return actually understated his income. The expert found that he over-reported his income. That's your expert. I think my friend was making the argument that our expert made the finding that it was, and that's at ECF 129-1, and I believe it's page ID 2789. I'd like to start with the question you raised, Judge White, which is that is the concern about this other act evidence, that the jury might find that this is really complicated, complex reporting of monies in and money out, but that the state bar evidence may have tipped the scale. And I don't believe that evidence was intrinsic to the government's case because the government did not treat Mr. Collins IOTAs as IOTA accounts. And the best example of that is at page 35 of my friend's brief, where any check deposited into Mr. Collins' account immediately became income to him, and that's not consistent with an IOTA. An IOTA is money put in, and then it's dispersed later when that's available, and that is not what occurred. And so for the government to lean on the state bar evidence that Mr. Collins committed misconduct, I believe was highly prejudicial. I don't believe it was intrinsic to their case, and something that could have tipped the scales in a situation like this. But moving money in and out of the IOTA account that wasn't properly being put in to that account, that affected his professed tax liability. So that did make those transactions pertinent, relevant, maybe even intrinsic to the evidence at trial, wouldn't you say? I would say that improperly using an IOTA account doesn't convert money that isn't income. Let's say it's the property of a third party, like a medical provider or a client. It doesn't convert it to income simply because an IOTA was improperly used. That doesn't make it income. And I don't think the government treated it that way. If he's taking money out that belongs to the client or putting taxable money in that shouldn't be in the account or otherwise communing how he was doing it, wouldn't that potentially affect his tax liability, his personal tax liability? But the government acknowledges just the opposite, both in their argument today and in their brief, that there was no allegation that he ever took any money improperly that was clients' money. I'm sorry, that was his client's money? That was his client's. No, that has nothing to do with this. What they're saying is that he took personal income or income derived from personal businesses, put it in the IOTA account, maybe left some of it there, maybe didn't, and he was basically laundering it through the IOTA account. Isn't that the charge? But they're also saying that any money that touched that account was income to him. It's not just that. It's not just that there was perhaps... But they're doing that just to show how it affected his taxes. I mean, they gave him all the deductions. They gave him all the professional deductions, right? I don't think that's true, Your Honor. No, I don't think that they gave him all the deductions. I think by calculating this by calendar year, there was not an appropriate calculation of what the income was for a particular year. But that goes back to the issue is that he may have gotten the deductions in a different year from the income, but I mean, that was for the jury. But we're talking specifically about what he did in a particular return, and that means what happened in a particular year, and that's why I think that that's inappropriate. I think it's a miscarriage of justice. I think the court should grant a new trial. Thank you very much. All right. Thank you, and the case will be submitted.